Per curiam.
As the result of a failed transaction involving the purchase and sale of a mobile home, plaintiffs Herman and Lena Wong (“the Wongs”) brought this action alleging that the defendants breached their contract to sell to the Wongs the mobile home at 5 Headlands Drive, Long Pond Village (“Long Pond”) for which the Wongs had originally bargained. Their eight-count complaint sought recovery for the defendants’ alleged I) breach of contract; II) fraud, deceit and misrepresentation; III) violation of the Elder Protection statute; IV) promissory estoppel; V) breach of the implied warranty of good faith and fair dealing; VI) unjust enrichment; VII) unconscionable contract in violation of G.L.c. 106, §2-302; and VIII) unfair and deceptive acts in violation of G.L.c. 93A The defendants’ answer and counterclaim alleged that it was the Wongs who breached the parties’ contract for the purchase and sale of the mobile home, and that they were entitled to retain the Wongs’ $10,000.00 purchase deposit pursuant to the liquidated damages clause in the contract.
On February 16,1999, the Wongs executed a purchase and sale agreement with the defendants to buy a mobile home, and paid the $10,000.00 deposit required by that agreement. The contract, signed by both parties, further provided for a final payment by the Wongs at the closing in the amount of $114,000.00. A handwritten *68 notation on the contract farther required the Wongs to pay an additional deposit of $40,000.00 on or before May 1,1999.[5]
The parties’ dispute arose shortly after their execution of the contract. On March 17,1999, Herman Wong gave Richard Kostandin (“Kostandin”) a $1,600.00 check for the purpose of purchasing points to obtain a discounted loan with a mortgage company.[6] In addition to buying the mobile home, the Wongs planned to lease available property in Long Pond Village as a site for the mobile home. However, after receiving a copy of the Long Pond leasing agreement, Mr. Wong mailed a letter to Kostandin on April 19,1999, informing him that he was dissatisfied with “most of the major terms” of the lease and thus “rejected the lease in its entiretyf.]” Mr. Wong’s letter further stated that because of his dissatisfaction with the lease, he considered that the separate agreement to purchase the mobile home had become invalid. Defendant Richard Nieboer (“Nieboer”), Long Pond’s trustee, responded to Mr. Wong’s letter by assuring the plaintiffs that if they were unhappy with the Long Pond leasing terms, they were free to move their mobile home to another location. But Nieboer reminded the Wongs that they were required to make an additional purchase deposit of $40,000.00 by May 1,1999 and that their failure to do so would result in their forfeiture of their initial $10,000.00 deposit. The Wongs failed to make the second deposit.
On October 19, 1999, the Wongs sent a G.L.c. 93A, §9 demand letter to the defendants seeking the return of their deposit and the $1,600.00 payment to secure a discounted mortgage. They also demanded payment of $2,000.00 for what they alleged were two violations of G.L.c. 93A, as well as attorney’s fees in the amount of $1,000.00. Nieboer sent a written response within thirty days indicating that it was the Wongs who breached the purchase and sale agreement for the mobile home, and that the defendants would retain the Wongs’ $10,000.00 deposit as liquidated damages for their breach pursuant to section 10 of the purchase and sale agreement.
This action was commenced on February 14,2002. After a lengthy period of discovery, both parties moved for summary judgment. After a hearing on September 28,2004, the court allowed the Wongs’ summary judgment motion as to complaint counts I through VIL The court also allowed the defendants’ motion for summary judgment in their favor on count VIII, ruling that there was insufficient evidence to demonstrate any G.L.c. 93A violation by the defendants. This appeal followed.
Summary judgment may be upheld on appeal only when, “viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.... The appellate court may consider any ground supporting the judgment.” Alba v. Raytheon Co., 441 Mass. 836, 840 (2004). A review of the record in this case reveals unresolved and dispositive factual questions which rendered summary judgment inappropriate. The allowance of the Wongs’ summary judgment motion on counts I - VII was error.
1. The Wongs alleged in their complaint that the defendants breached the parties’ purchase and sale agreement when they informed the Wongs that the specific *69 mobile home at 5 Headlands Drive for which the Wongs had contracted was not available to them. The Wongs further alleged that because they could not purchase the particular mobile home they had selected, they “advised the Defendants that they did not want any other manufactured home and demanded the return of the $10,000.00 deposit.” Mr. Wong made similar representations in his affidavit in opposition to the defendants’ summary judgment motion. However, this alleged “unavailability” of the mobile home was never mentioned by Mr. Wong as a basis for terminating the contract in any correspondence with the defendants. In fact, he had first claimed that the purchase agreement had become invalid only because he was dissatisfied with the terms of the separate leasing agreement.
In opposition to the Wongs’ contentions, the defendants argued that they never stated or implied that the mobile home the Wongs wished to purchase was no longer available to them. The defendants further asserted that “[cjommon sense requires one to conclude that if [the plaintiffs] were told prior to writing the April 19, 1999 letter that the Mobile Home was no longer available, they would have expressed that particular reason in the letter to justify the return of their deposit.” The defendants also proffered evidence of the continued availability of the specific mobile home in question in the form of a purchase and sale agreement signed by another party for the same home in late May, 1999.
Given the defendants’ contentions, the Wongs’ unsubstantiated, contrary assertions merely presented a question of material fact as to which party had breached the purchase agreement Those assertions in no way served as a sufficient basis for the entry of summary judgment in their favor as a matter of law on count I. A trial on the merits is necessary for the assessment of the weight and credibility of the conflicting accounts provided by the parties. See Carter v. Seto, 2005 Mass. App. Div. 62 (“The existence of any genuine question of material fact necessarily precludes the proper entry of judgment.”).
II. Fraud and Misrepresentation. Recovery on count II of their complaint required the Wongs to establish that the defendants “made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiffs] to act thereon, and that the plaintiffs] relied upon the representation as true and acted upon it to [their] damage.” Macoviak v. Chase Home Mortgage Corp., 40 Mass. App. Ct. 755, 760 (1996). The Wongs presented no evidence, however, that the defendants knowingly made any false statements to induce them to buy the mobile home. Even if the Wongs could establish that they were subsequently told that the specific mobile home in question was no longer available, that fact would not prove that the defendants knew of that unavailability when the purchase agreement was executed, and intended to mislead the Wongs from the outset Given the absence of any evidence marshaled by the Wongs in support of their claim, it was error to enter judgment for them as a matter of law on this complaint count.
III. Violation of the Elder Protection Statute. In their amended complaint, the Wongs assert that the defendants’ conduct violated G.L.c. 19A, §§1-26, the Elder Protection Statute. Section 14 of that statute defines “financial exploitation” in the context of elderly abuse as
an act or omission by another person, which causes a substantial monetary or property loss to an elderly person, or causes a substantial monetary or property gain to the other person, which gain would otherwise benefit the elderly person but for the act or omission of such other person; provided, however, that such an act or omission shall not be construed as financial exploitation if the elderly person has knowingly consented to such act or omission unless such consent is a consequence of misrepresentation, undue influence, coercion or threat of force by *70 such other person; and, provided further, that financial exploitation shall not be construed to interfere with or prohibit a bona fide gift by an elderly person or to apply to any act or practice in the conduct of any trade or commerce declared unlawful by section two of chapter ninety-three A.
While the Wongs do not deny that they signed and consented to the contract, they argue that their consent was a consequence of the defendants’ misrepresentations. As this claim is predicated upon the fraud and misrepresentation claim, it will be necessary for the trier of fact to determine the intentions of the defendants when they entered into the purchase and sales agreement with the plaintiffs. Granting summary judgment as to this count was improper, when there was no evidence offered as to the defendants’ intentions.
IV. Promissory Estoppel. The doctrine of promissory estoppel “is implicated when a promise was ‘intended to induce the reactions it elicited,’ and when ‘injustice can be avoided only by enforcement of the promise.’” Northrup v. Brigham, 63 Mass. App. Ct. 362, 369 (2005), quoting Simon v. Simon, 35 Mass. App. Ct. 705, 711 (1994). This equitable doctrine is used by the court only in instances where there is “the absence of an express contract.” Id.
Due to the fact that there was a contract between the two parties, this doctrine is inapplicable, and therefore, the trial judge erred as a matter of law in ruling in favor of the plaintiffs on this claim.
V. Breach of Implied Warranty of Good Faith and Fair Dealing. The implied warranty of good faith and fair dealing provides “that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract!.]” Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 381 (2004), citing Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991). Under these circumstances, where both parties are alleging that the other party breached the contract, and there are material facts in dispute with regards to who breached the contract, it was improper for the judge to grant summary judgment in favor of the plaintiffs on this claim.
VI. Unjust Enrichment. “The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party.” Salamon v. Terra, 394 Mass. 857, 859 (1985). This theory of recovery can only be used if the court does not find that a valid contract was formed, however, it is clear that the two parties entered into a valid contract for the purchase and sale of a mobile home. Therefore, it was not appropriate for the plaintiff to succeed on this cause of action. “The law will not imply a contract where there is an existing express contract covering the same subject matter.” Zarum v. Brass Mill Materials Corp., 334 Mass. 81, 85 (1956).
VIL Unconscionable Contract, in violation of G.L.c. 106, §2-302. In their amended complaint, the plaintiffs alleged that the contract for the purchase of the mobile home was unconscionable, because it did not contain a clause making the contract contingent upon whether the plaintiffs were able to obtain a mortgage, and furthermore, it did not contain a clause making the contract subject to approval to lease property at Long Pond Village.
To determine if a contract is unconscionable, “the basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract... The principle is one of prevention of oppression and unfair surprise... and not of disturbance of allocation of risks because of superior bargaining power.” Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 291-292 (1980), quoting Official Comment 1 to the Uniform Commercial Code, G.L.c. 106, §2-302.
While the contract to purchase the mobile home was not contingent upon the *71 plaintiffs obtaining a mortgage or leasing property in Long Pond Village, this does not make it unconscionable. As to leasing property in Long Pond Village, the defendants made it clear in a letter to the plaintiffs that they were not under any obligation to lease property in Long Pond and they were free to keep their mobile home elsewhere. The plaintiffs failed to prove that, as a matter of law, this contract was unconscionable, and therefore, the trial judge’s grant of summary judgment in their favor was improper.
Summary judgment for the plaintiffs on complaint counts I through VII is vacated, the allowance of the plaintiffs’ Rule 56 motion on those counts is reversed, and the action is returned to the New Bedford District Court for trial.
So ordered.

 Next to the handwritten notation on the contract were the initials “RCK,” representing defendant Richard Kostandin’s (“Kostandin”) signature. Neither of the Wongs initialed the notation. While they allege that Kostandin fraudulently added the additional deposit required sometime after the execution of the agreement, the handwritten provision appears in the Wongs’ own copy of the purchase and sale agreement provided at the time it was executed.

 The Wongs allege that the payment to Kostandin was for the purpose of securing a mortgage with points. However, while there is no evidence in the record to support this claim, it appears that this was the likely reason.